UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

RICHARD E. WARREN, JR.,                        No. 07-11283

                    Debtor(s).
_____/

JOHN J. FORD III,

                    Plaintiff(s),

           v.                                 A.P. No. 08-1014

RICHARD E. WARREN, JR.,

                    Defendant(s).
_____/

Memorandum After Trial
_____

       The facts in this nondischargeability case are not as clear as the court would like them to be, largely due to a truly awful effort at self-representation by debtor and defendant Richard Warren. Nonetheless, the burden is on plaintiff John Ford to prove his allegations that he has a claim against Warren which is nondischargeable due to fraud pursuant to § 523(a)(2) of the Bankruptcy Code. The court accordingly finds the facts as Ford has proven them.

1

Ford is a retired attorney, now in his seventies. Although he suffered a stroke seven years ago, he appears fully recovered and mentally unimpaired at this time.

In October of 2001, Ford owned a 5-acre parcel with a residence at 1030 Borrette Lane in Napa which was in foreclosure. It was worth about $2 million, and encumbered with deeds of trust securing about $1.6 million. Warren was a licensed real estate sales person working for a mortgage broker. Ford hoped to refinance the property, and was referred to Warren by a friend.

After reviewing Ford's situation, Warren told him that refinancing the property was impossible due to Ford's lack of income and poor credit rating. It appears (the facts are murky here) that things languished at this point for a month or so until Ford approached Warren with a proposition that Warren become a 50% percent owner of the property in return for Warren's agreement to advance such sums as were necessary to cure the defaults and keep the property from being lost to foreclosure. It is important to note that the court finds that the idea was Ford's, Ford drafted the agreement, and Ford represented to Warren that he was about to receive an inheritance, which was not fully truthful.

After Warren agreed to Ford's proposal - his motivations are cloudy, except for his representations that Ford told him he was Ford's "only salvation" and it seemed like the "right thing to do" - , Warren discovered that the default under the deed of trust was non-monetary and that it would take $110,000.00 to mollify the deed of trust holder. Pursuant to the agreement, Warren paid some $215,000.00 to maintain the property and stave off foreclosure. Under the agreement, Warren's obligations ended on June 1, 2002.

Ford's "inheritance" failed to materialize. On October 7, 2002, Ford returned to Warren with news that the property was once again on the verge of foreclosure and with another proposition. This time, ownership of the property would be transferred to Warren, who could then use his credit to refinance. Warren would move into the Borrette Lane property and Ford and his wife would move into Warren's home. The idea was Ford's, and again it was Ford who drafted the agreement. Warren felt he had no choice except to agree, as it appeared to be the only way to avoid losing the $215,000.00 he had advanced. Ford received $50,000.00 from the escrow in addition to use of Warren's home rent free for six months.

The agreement (which the court stresses was drafted by Ford) gave Ford and his wife the right to

2

repurchase the property for three years.  After six months, Ford demanded the return of the property and Warren refused, noting that he was still out $215,000.00.  Ford then commenced suit against Warren and eventually obtained possession of the property.

The "fraud" alleged by Ford is that Warren tricked him out of his property by telling him he would return it in six months knowing that he would not do so.  However, there is no convincing evidence of such an agreement, let alone evidence that Warren had any intent to defraud Ford.  The agreement, which Ford drafted, called for a right to repurchase for three years and not a right to unconditional conveyance in six months.  The court does not find the testimony of Ford that there was some sort of side agreement credible, as he and Warren clearly spent some time modifying and documenting the terms of their agreement.  Even if the court believed the six-months story, there is no evidence that Warren had intent to cheat Ford when he entered into the agreement.   Nondischargeability cannot be based on mere breach of an agreement. *Lockerby v. Sierra*, 535 F.3d 1038, 1042 (9th Cir. 2008).

Ford relies heavily on the $4 million state court default judgment entered against Warren.  It is easy to see how Ford could have appeared the victim by a court hearing only one side of the story, especially if certain details were omitted like the fact that Ford was a lawyer, the agreements were his idea, he drafted the agreements, Warren paid out $215,000.00 to save the property from foreclosure, and Ford was not fully honest with Warren about his prospective inheritance.  In any event, application of issue preclusion is at its core a matter of discretion.  *Dias v. Elique*, 436 F.3d 1125, 1128 (9th Cir. 2006); *In re George*, 318 B.R. 729, 733 (9th Cir. BAP 2004), aff'd, 144 F. App'x 636 (9th Cir. 2005), cert. denied, 126 S.Ct. 1068 (2006). Application in this case would lead to an unjust result.

Moreover, the default judgment was based on both fraud, which is nondischargeable conduct, and statutory liability under California Civil Code § 2945.4, which is not.  Civil Code § 2945.6, which was the basis for Ford's award of treble damages, does not require any finding of fraud, oppression or malice.  The finding of fraud was therefore not necessary to the judgment, a requirement for giving a default judgment

preclusive effect. *In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003).[1]

For the foregoing reasons, Ford shall take nothing by his complaint, which will be dismissed with prejudice. Warren shall recover any costs of suit.

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052. An appropriate judgment will be entered.

Dated: December 18, 2008

Alan Jaroslovsky
U.S. Bankruptcy Judge

---

[1] Ford's complaint alleges nondischargeability only for fraud pursuant to § 523(a)(2). Even if it had pleaded a claim for willful and malicious conduct under § 523(a)(6), however, there would still be no basis for a nondischargeable debt because the evidence established no malicious intent, which is essential to a judgment under that section. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998).

4